UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA      :   **ECF CASE**

    - v. -                      :   09 Cr. 341 (VM)

HECTOR RAYMOND PEÑA,          :
    a/k/a "Frank Rodriguez,"
    a/k/a "Montana,"          :

        Defendant.        :
- - - - - - - - - - - - - - - - -x


## GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT HECTOR RAYMOND PEÑA'S MOTION TO SEVER

PREET BHARARA
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Laurie Korenbaum
Timothy D. Sini
Assistant United States Attorneys
    -Of Counsel-

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA           :    **ECF CASE**

          - v. -                   :    09 Cr. 341 (VM)

HECTOR RAYMOND PEÑA,               :
    a/k/a "Frank Rodriguez,"
    a/k/a "Montana,"                :

          Defendant.               :
- - - - - - - - - - - - - - - - - -x

### GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT HECTOR RAYMOND PEÑA'S MOTION TO SEVER

The Government respectfully submits this Memorandum of Law in opposition to defendant Hector Raymond Peña's (hereinafter "the defendant" or "Peña") motion to sever Counts One through Three of the Indictment, which charge he and others with the drug-related murder of Pedro Medina, from Counts Four through Eight of the Indictment, which charge he and others with the drug-related murders of Jose Suarez and Juan Carmona. Peña argues that the counts should be severed because they were improperly joined in the first instance. He next argues that even if joinder was proper, the counts should nevertheless be severed because he would suffer "spillover prejudice" if the murders were tried together.

Peña's motion should be denied in its entirety. First, there is no basis for severance because all of the counts in the Indictment were properly joined pursuant to Rule 8(a) of the

1

Federal Rules of Criminal Procedure because the murder of Pedro Medina, charged in Counts One through Three, and the murders of Jose Suarez and Juan Carmona, charged in Counts Four through Eight, are parts of a common scheme or plan and are of a similar character in that, *inter alia*, (1) the murders themselves were carried out by the same group of perpetrators, including the defendants, in a very similar fashion and very close in time; and (2) the murders will be established at trial through some of the same witnesses, including several cooperating witnesses who will testify about both murders, and some of the same physical evidence, including ballistics which demonstrate that the same gun was use to commit all three murders.

Second, Peña has not demonstrated that he will suffer substantial prejudice as a result of joinder, as he must in order to prevail on a motion to sever pursuant to Rule 14 of the Federal Rules of Criminal Procedure.

## BACKGROUND

On April 7, 2009, a federal grand jury in this District returned and filed indictment No. 09 Cr. 441 (VM) charging, *inter alia*, defendant Hector Raymond Peña, a/k/a "Frank Rodriguez," a/k/a "Montana," with the drug-related murders of Pedro Medina (Counts One, Two, and Three), and Jose Suarez and Juan Carmona (Counts Four, Five, Six, Seven, and Eight). Medina was murdered on May 9, 1997 and Suarez and Carmona were murdered together on June 25, 1997. Rafael Francisco, a/k/a "67" was also charged in all counts

with the murders of Medina, Suarez and Carmona, while Jose Peña, a/k/a "Chelo," was charged only with the murders of Suarez and Carmona. As charged in the Indictment, and as the proof at trial will demonstrate, Hector Raymond Peña and Rafael Francisco, along with Richard Fontanez, a/k/a "Romantico," were hired to murder Medina, Suarez and Carmona, and Jose Peña, along with his brother Hector Raymond Peña, Rafael Francisco, and Richard Fontanez, was hired to kill Suarez and Carmona.[1]

## ARGUMENT

### COUNTS ONE THROUGH THREE OF THE INDICTMENT SHOULD NOT BE SEVERED FROM COUNTS FOUR THROUGH EIGHT OF THE INDICTMENT

Peña's first argument is that Counts One through Three of the Indictment were improperly joined with Counts Four through Eight of the Indictment and that the two groups of counts – essentially, the two charged murder incidents – should be severed and tried separately. Memorandum of Law in Support of Motion for Severance, dated August 1, 2012 ("Def. Mem."), at 1-3. Peña contends that the two murder incidents are not of the "same or similar" character nor do they constitute a "common scheme or plan" two of the factors that support joinder of offenses pursuant to Rule 8(a) of the Federal Rules of Criminal Procedure. Id. Peña next argues that, even if joinder of the two murder incidents was

---

[1] Fontanez was convicted after trial in 1998 in New York County for his participation in the murders of Suarez and Carmona, and pled guilty to a third and unrelated murder. He is serving a life sentence with no possibility of parole and has not been charged in this case.

proper, the Court should nevertheless sever them because he would suffer unspecified "spillover prejudice" should they be tried jointly. *Id.* at 3. He is wrong on both counts.

A. **Applicable Law**

Rule 8(a) provides that two or more offenses may be joined in a single indictment,

> if the offenses charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

Fed. R. Crim. P. 8(a). Accordingly, Rule 8(a) permits joinder of offenses against a single defendant in three circumstances: "when they are (1) 'based on the same act or transaction,' or (2) based 'on two or more acts or transactions connected together or constituting parts of a common scheme or plan,' or (3) 'of the same or similar character.'" *United States v. Turoff*, 853 F.2d 1037, 1042 (2d Cir. 1988) (quoting Rule 8(a)). "Each of these tests for when offenses may be tried together reflects a policy determination that gains in trial efficiency outweigh the recognized prejudice that accrues to the accused." *Id.* (citing *United States v. Werner*, 620 F.2d 922, 929 (2d Cir. 1980)).

Rule 8(a) does not require "too precise an identity between the character of the offenses." *United States v. Werner*, 620 F.2d 922, 926 (2d Cir. 1980). Indeed, for purposes of Rule 8(a), "'[s]imilar' charges include those that are 'somewhat alike,' or those 'having a general likeness' to each other." *United States*

4

v. *Rivera*, 546 F.3d at 253 (quoting *Werner*, 620 F.2d at 926). Multiple distinct counts "warrant joinder in a single trial" when they have "sufficient logical connection" to one another, *United States v. Ruiz*, 894 F.2d at 505, or where "the same evidence may be used to prove each count," *United States v. Blakney*, 941 F.2d 114, 116 (2d Cir. 1991). "For purposes of analysis under Rule 8(a)," however, "no one characteristic is always sufficient to establish 'similarity' of offenses, and each case depends largely on its own facts." *United States v. Blakney*, 941 F.2d at 116 (internal quotations and citations omitted). In making this determination, the Court may consider "both what is alleged in the indictment, as well as the Government's pretrial representations of the evidence that will be presented at trial." *United States v. Ezeobi*, No. 10 Cr. 669 (DLC), 2011 WL 3625662 (S.D.N.Y. Aug. 17, 2011), at *1 (citing *United States v. Ajlouny*, 629 F.2d 830, 842 (2d Cir. 1980)).

Rule 14 provides that, even where joinder is proper under Rule 8(a), a court may nonetheless grant a severance "[i]f the joinder of offenses . . . in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government . . . ." Fed. R. Crim. P. 14. In order to prevail on a severance motion under Rule 14, however, "the defendant must show not simply some prejudice but *substantial* prejudice." *United States v. Sampson*, 385 F.3d 183, 190 (2d Cir. 2004) (quoting *United States*

v. *Werner*, 620 F.2d at 928) (internal quotations omitted) (emphasis in original). As the Second Circuit has explained, "[g]ranting separate trials under Rule 14 simply on a showing of some adverse effect, particularly solely the adverse effect of being tried for two crimes rather than one, would reject the balance struck in Rule 8(a), since this type of 'prejudice' will exist in any Rule 8(a) case." *Id.* Indeed, the Second Circuit has stated that "[t]he principles that guide the district court's consideration of a motion for severance usually counsel denial." *United States v. Rosa*, 11 F.3d 315, 341 (2d Cir. 1993).

A defendant seeking severance therefore shoulders the "extremely difficult burden" of showing that he would be so prejudiced by joinder that he would be denied a fair trial. *United States v. Casamento*, 887 F.2d 1141, 1149 (2d Cir. 1989) (internal quotation marks omitted). It is not enough for a defendant to show that he "may have a better chance of acquittal in [a] separate trial[]." *Zafiro v. United States*, 506 U.S. 534, 540 (1993). Instead, "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of [a defendant], or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 539; see also *United States v. Panza*, 750 F.2d 1141, 1149 (2d Cir. 1984) (explaining that prejudice must be "sufficiently severe to outweigh the judicial economy that would be realized by avoiding lengthy

multiple trials").

Even in those rare instances where a defendant establishes a "high" risk of prejudice, "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Id.* at 539 (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)); *see also United States v. Smith*, 348 Fed. Appx. 636, 639 (2d Cir. 2009) (citing *United States v. Werner*, 620 F.2d at 929); *United States v. Freyer*, 333 F.3d 110, 114 (2d Cir. 2003).

B.  **All of the Counts in the Indictment Were Properly Joined and Severance Is Not Appropriate in this Case**.

As alleged in the Indictment, and as the proof at trial will demonstrate, the murder of Pedro Medina and the murders of Jose Suarez and Juan Carmona were both part of a common scheme or plan and sufficiently similar in character to warrant joinder. Both murders were committed by the same group of men, criminals who congregated at a parking lot in the Bronx, where they planned the murders. These men - the defendants Jose Peña, Rafael Francisco and Hector Raymond Peña, and Richard Fontanez - had previous criminal relationships with each other in that they committed home invasion robberies of drug dealers together. In the Spring of 1997, they decided to augment their robbery income by hiring themselves out to commit murders for profit. This was their motive, shared by each and every one of them, including the

defendant.

They proceeded to execute their plan in short order, murdering Medina in May and Suarez and Carmona in June. Both of the murder incidents were drug related: Pedro Medina's murder was the culmination of a drug turf war and Jose Suarez and Juan Carmona Suarez were murdered after they killed a drug dealer's younger brother during the course of robbing the drug dealer's stash house. All three victims were shot in the head at point blank range after their wrists were bound. The gun used to murder all three victims was the same. The *modus operandi* employed in the two murder incidents was identical - the murderers surveilled their victims to determine their daily habits, abducted them while impersonating police officers, bound them by the wrists, and then shot them through the head, execution-style.

Much of the evidence that the Government will present at trial will be used to prove both murder incidents, such as the testimony of a ballistics expert who will confirm that the same gun was used to murder all three victims; plastic flexicuffs that were seized by the police from the parking lot where the murderers congregated; testimony by multiple cooperating witnesses about both murder incidents, about the events leading up to the murders, including events that occurred at the parking lot, and about their own criminal associations with the defendants. In addition, the Government expects to prove up certain uncharged but relevant

criminal conduct of the defendants through the testimony of police officers who arrested them. Thus, there is a striking similarity not only as to the murder incidents themselves, but in the proof that will be presented at trial with regard to each one of those incidents.

In support of his motion to sever, Peña points to several differences between the charged murders, but he wholly ignores all of the many similarities discussed above. Thus, Peña highlights the fact that the persons who hired the defendants to commit the murders had different reasons for doing so, while ignoring the fact that the defendants themselves each had the same motive for committing the murders - the payments they received after the murders were committed. Similarly, Peña points out that Medina's body was dumped by the side of a road, while the bodies of Suarez and Carmona were burned, while ignoring that all three victims were abducted and bound by the wrists by perpetrators who impersonated police officers and then executed by being shot in the head by the same gun.

The single case cited by Peña in support of his misjoinder argument, *United States v. Tubol*, 191 F.3d 88 (2d Cir. 1999), does not advance his position. In *Tubol*, the Second Circuit found that two robbery counts, one charging the robbery of a bank and one the robbery of a small store, were improperly joined. *Tubol*, 191 F.3d at 95. The Court's decision, however, was based

not only on the fact that the victims were "distinctly different," but on the fact that the defendant employed a "distinctly different" *modus operandi* in each of the robberies. *Id.* (in one robbery, the defendant "dressed as a Hasidic Jew, spoke in English with no notable accent. . . did not brandish a weapon . . . [and] acted with dispatch," while in the other robbery, the defendant "acted at a leisurely pace, pulled a gun on his victim, and spoke in Hebrew"). Here, the *modus operandi* employed in the two murder incidents was virtually identical. Moreover, the victims here were all involved in the drug trade and so are much more alike than the robbery victims in *Tubol*. Finally, the *Tubol* Court upheld the joinder of a gun count, noting that evidence of the gun possession was also admissible to prove the robbery counts in that it demonstrated that the defendant had the means to commit the robbery. *Id.* Here, too, there is a substantial overlap in the evidence that will be offered as to both murder incidents, including a very substantial overlap in witnesses. This overlap supports joinder of the two murder incidents. *See United States v. Page*, 657 F.3d 126, 130 (2d Cir. 2011) (noting that joinder was proper, in part, because separate trials would have required much of the same evidence, resulting in witnesses having to testify twice on the same matters).

Finally, Peña utterly fails to specify the substantial prejudice he would suffer resulting from a single trial, aside from

10

his bald assertion that such prejudice "cannot be overstated." Def. Mem. at 3. Moreover, the prospect that a joint trial might result in "spillover prejudice" can easily and adequately be addressed through an instruction by the Court, which is standard in this district in any case involving multiple counts, that the jury must consider the evidence as to each count separately. *See, e.g. Smith*, 348 Fed. Appx. at 639; *Rivera*, 546 F.3d at 254 (rejecting "generalized claim of prejudice" where district court instructed the jury to consider each count separately and to return a separate unanimous verdict on each count). In short, Peña's suggestion that the jury might think poorly of him because he is charged in connection with two murder incidents rather than one, *see* Def. Mem. at 3, does not constitute prejudice sufficient to sever the two murder incidents. *Ezeobi*, 2011 WL 3625662, at *2 (noting that the "danger that Rule 14 authorizes a district judge to cure is not merely that the jury will think worse of a defendant charged with two crimes rather than one, but that the jury will use the evidence cumulatively") (citing *Werner*, 620 F.2d at 929).

Severing Counts One, Two and Three of the Indictment from Counts Four, Five, Six, Seven, and Eight, will waste judicial resources, increase the burden on citizens serving as jurors, and necessitate having witnesses reiterate the same testimony in two lengthy trials. Moreover, the similarities in the two murders, both in terms of the facts underlying those events and the evidence

11

that will be used to prove those crimes, demonstrates that joinder is appropriate in this case, especially in the absence of any showing whatsoever that the defendant will suffer substantial prejudice resulting from joinder. Accordingly, Peña's motion for severance should be denied.

## CONCLUSION

For the reasons set forth above, Peña's motion to sever should be denied.

Dated:  New York, New York
        August 21, 2012

Respectfully submitted,

PREET BHARARA
United States Attorney
Southern District of New York

By: _____
LAURIE A. KORENBAUM/TIMOTHY D. SINI
Assistant United States Attorneys
Telephone: (212) 637-2266/2358

CERTIFICATE OF SERVICE

LAURIE A. KORENBAUM deposes and says that she is employed in the Office of the United States Attorney for the Southern District of New York.

That on August 21, 2012, she caused to be served a copy of the foregoing Government's Memorandum of Law in Opposition to Defendant Hector Raymond Peña's Motion to Sever, by filing a copy via ECF and sending a copy via e-mail to:

>Stanislao A. Germán, Esq.
>Counsel for Defendant Hector Raymond Peña
>Law Offices of Stanislao A. Germán
>Barclay Building
>299 Broadway, Suite 200
>New York, New York 10007
>stan@myersgaliardo.com

I declare under penalty of perjury that the foregoing is true and correct. 28 U.S.C. Section 1746.

_____
Laurie A. Korenbaum