UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/17/2020
```

-----------------------------------X

UNITED STATES OF AMERICA,             :
                                      :
                                      :          **09 CR 341(VM)**
          -against-                   :      **DECISION AND ORDER**
                                      :
HECTOR RAYMOND PEÑA,                  :
                                      :
                     Defendant.       :
-----------------------------------X

**VICTOR MARRERO, U.S.D.J.:**

On October 29, 2013, defendant Hector Raymond Peña ("Peña") was convicted after trial of two counts of conspiracy to commit murder-for-hire in violation of 18 U.S.C. § 1958 ("Counts One and Four"); three counts of murder-for-hire, in violation of 18 U.S.C. § 1958 ("Counts Two, Five, and Six"); and three counts of use of a firearm to commit murder during a crime of violence (specifically, the conspiracies charged in Counts One and Four), in violation of 18 U.S.C. § 924(j) ("Counts Three, Seven, and Eight"). (See Dkt. No. 309; Minute Entry dated 10/29/2013.)

On October 3, 2014, Peña was sentenced to a term of life imprisonment for each count, to run concurrently. (See Dkt. No. 309 at 2.) He is currently serving his sentence at United States Penitentiary ("USP") Atwater.

Pending before the Court are three issues for resolution: (1) Peña's August 5, 2019 letter request for appointment of counsel to assist him in challenging his

convictions under <u>United States v. Davis</u>, 139 S. Ct. 2319
(2019) (Dkt. No. 422); (2) Peña's Section 2255 motion to
vacate his convictions of Counts Three, Seven, and Eight (Dkt.
Nos. 422, 432); and (3) his motion for compassionate release
under 18 U.S.C. § 3582(c)(1)(A) (Dkt. No. 450). For the
reasons set forth below, the Court (1) DENIES Peña's request
for appointment of counsel; (2) GRANTS his motion to vacate
his convictions of Counts Three, Seven, and Eight; and (3)
DENIES his motion for compassionate release.

## I.   BACKGROUND

The facts most relevant to the resolution of these issues
arise from the recent procedural history of this case.
However, because further background regarding Peña's criminal
conduct and his present medical condition similarly bear on
the Court's analysis, a brief overview of those matters also
follows.

A.   <u>CRIMINAL CONDUCT AND CHARGES</u>

A federal grand jury indicted Peña, and his brother and
co-defendant Jose Peña ("Jose"), on April 7, 2009. (Dkt. No.
1.) A superseding indictment was filed on April 15, 2013,
charging Peña with the drug-related murders of three people:
Pedro Medina, Jose Suarez, and Juan Carmona. (Dkt. No. 152.)
By contrast, Jose was charged with only the murders of Jose
Suarez and Juan Carmona. (<u>Id.</u>)

Regarding the Pedro Medina murder, a drug dealer hired Peña to kill Medina so the drug dealer could take over Medina's territory. (See Trial Tr. at 224:1-225:10, 230:1-14.). For the other two murders, perpetrated by both Peña and Jose, a different drug dealer hired the brothers to kill Jose Suarez in retaliation for killing the drug dealer's younger brother at a stash house. (See Trial Tr. at 509:8-511:22, 523:3-10, 590:1-12.) Although Juan Carmona was not the intended target, he was killed by Peña and Jose because he happened to be with Suarez when the brothers carried out the hit. (See Trial Tr. at 646:19-647:5, 650:13-661:6.)

Counts One, Two, and Three charged Peña with the murder of Pedro Medina. Specifically, Count One charged conspiracy to commit murder-for-hire; Count Two charged the substantive murder-for-hire offense; and Count Three charged the use of a firearm to commit murder during a crime of violence, i.e., the conspiracy to commit murder-for-hire charged in Count One and an uncharged drug trafficking crime.

Because Peña and his brother were both charged with the murders of Jose Suarez and Juan Carmona, they were both charged in Counts Four, Five, Six, Seven, and Eight relating to that criminal conduct. Count Four charged conspiracy to commit murder-for-hire of both Jose Suarez and Juan Carmona. Count Five charged substantive murder-for-hire for the actual

3

murder of Jose Suarez, while Count Six charged substantive murder-for-hire for the actual murder of Juan Carmona. Counts Seven and Eight charged both Peña and his brother with the use of a firearm to commit murder -- of Jose Suarez and Juan Carmona, respectively -- during a crime of violence, namely, the conspiracy to commit murder-for-hire charged in Count Four and an uncharged drug trafficking crime.

In October 2013, Peña and his brother were tried and convicted on all counts charged. (See Minute Entry dated 10/29/2013.) They were both sentenced to life imprisonment on each applicable count of conviction -- including mandatory life sentences on the murder-for-hire charges in Counts One, Two, Four, Five, and Six -- to run concurrently. (See Dkt. Nos. 309, 315.)

B.   PROCEDURAL HISTORY

On June 24, 2019, the Supreme Court held in Davis that the residual clause of 18 U.S.C. § 924(c) -- under which Peña has three convictions[1] -- was unconstitutionally vague. See

---

[1] Peña was convicted for violations of Section 924(j), not Section 924(c). However, a person is guilty under Section 924(j) if he causes the death of a person through the use of a firearm while "in the course of a violation of subsection (c)." 18 U.S.C. § 924(j). In turn, 924(c) criminalizes the use of a firearm in furtherance of "a crime of violence or drug trafficking crime." Id. § 924(c)(1)(A). And a "crime of violence" is defined as a felony that "has as an element the use, attempted use, or threatened use of physical force" (the force clause), or which, "by its nature, involves a substantial risk that physical force against the person or property of another may be used" (the residual clause). See id. § 924(c)(3)(A)-(B). Here, because Peña's convictions for violations of Section 924(j) were

139 S. Ct. at 2336. By letter dated August 5, 2019, Peña requested appointment of counsel to assist him in moving to vacate his convictions on Counts Three, Seven, and Eight pursuant to that decision. (See Dkt. No. 422.) In his letter, Peña noted that his brother had filed a similar letter with the Court the month before, and in response, the Court had appointed Jose counsel given the legitimacy of his claims and the complexity of the issues involved. For the same reasons, Peña requested the Court appoint him counsel to pursue his substantially similar Davis claims.

By letter dated May 18, 2020 and filed June 1, 2020, Peña again requested counsel be appointed in his case for the same reasons and, also, to meet his upcoming filing deadline under Davis. (See Dkt. No. 428.)

On June 2, 2020, the Court issued an order, explaining that it had deferred ruling on Peña's request for appointment of counsel until the completion of briefing on Jose's nearly identical Davis claims. (Dkt. No. 429.) The Court added that it would review Peña's application for counsel after Jose's claims were fully briefed to determine whether appointment of counsel in Peña's case would be warranted.[2]

---

predicated on the conspiracy to commit murder-for-hire, they were predicated on the residual clause in Section 924(c)(3)(B).

[2] In the June 2, 2020 Order, the Court also noted that the Second Circuit had temporarily stayed Jose's request for leave to file a Section 2255 motion, delaying completion of the briefing in that case.

On July 6, 2020, the Court granted Jose's motion to vacate his convictions of Counts Seven and Eight and issued an amended judgment. (Dkt. Nos. 438, 439.) That same day, the Court directed the Government to inform the Court of its proposal for proceeding on Peña's Davis claims in light of its decision on the substantially identical issues decided on Jose's motion. (Dkt. No. 440.)

On July 13, 2020, the Government conceded that, as in Jose's case, Counts Seven and Eight must be vacated after Davis. (Dkt. No. 445.) However, the Government argued that Count Three should not be vacated because it had a valid predicate that survived Davis. The Government said nothing of Peña's outstanding request for appointment of counsel.

On August 4, 2020, Peña submitted a *pro se* letter to the Court, challenging the Government's arguments with respect to the validity of Count Three and requesting leave to file a Section 2255 motion. (Dkt. No. 449.) The August 4, 2020 submission also requested that the Court hold a full

---

Shortly thereafter, counsel for Jose requested that the Court accept a "placeholder" Section 2255 motion because it was unclear whether Jose's pursuit of related relief before the Second Circuit tolled the time for him to submit a formal motion in this Court. (Dkt. No. 430.) The Court granted that motion, (Dkt. No. 431), and on June 12, 2020, the Court granted Peña similar relief by construing his request for counsel "as a timely Section 2255 motion," (Dkt. No. 432). As before, the Court indicated it would hold Peña's motion in abeyance until briefing on Jose's Davis claims was complete.

resentencing and renewed Peña's request for appointment of counsel.

On August 24, 2020, Peña filed another *pro se* submission, raising many of the same points regarding the constitutional invalidity of Counts Three, Seven, and Eight and adding a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) ("Section 3582") based primarily on Peña's medical conditions and the alleged failures of USP Atwater to mitigate the spread of COVID-19. (See Dkt. No. 450.)

On October 9, 2020, the Second Circuit granted Peña a limited certificate of appealability and remanded the proceeding back to this Court to determine, upon further review, the validity of Peña's 18 U.S.C. § 924(j) convictions. (See Dkt. No. 451.)

C.   MEDICAL CONDITION

Along with his August 24, 2020 submission, Peña provided the Court with certain health records from 2013 and 2016. (See Dkt. No. 450 at 19-25.) Together, the records reflect that Peña has suffered from numerous physical and psychiatric conditions, including: esophageal reflux, unspecified episodic mood disorder, retained dental root, atypical depressive disorder, obesity, hemorrhoids, and blindness in one eye, among others.

The records also show that Peña has received treatment in the form of medication and counseling for many of these conditions. One document from the end of 2016 indicates that, by then, Peña's esophageal reflux, hemorrhage of gastrointestinal tract, and knee pain had been resolved. At that time, however, he continued to suffer from several conditions including conjunctival xerosis, arthropathy, constipation, and hemorrhoids. Also at that time, in late 2016, Peña's body mass index ("BMI") was between 30.0-30.9. One document from July 7, 2016 showed that Peña had experienced blindness in his left eye, had been given an injection, and was scheduled for an eye exam and monitoring, though no further records on this issue were provided. Peña offers no medical records from this year that reflect his present medical condition.

## II.   DISCUSSION

A.   APPOINTMENT OF COUNSEL

In criminal matters, the right to appointed counsel "extends to the first appeal of right, and no further." Starkes v. United States, No. 20 Civ. 0265, 2020 WL 230944, at *1 (S.D.N.Y. Jan. 15, 2020) (quoting Pennsylvania v. Finley, 481 U.S. 551, 555 (1987)). Thus, for defendants like Peña, bringing post-conviction habeas motions, it is within

the district court's discretion to appoint counsel when "the interests of justice so require." 18 U.S.C. § 3006A(a)(2).

Here, the Court finds that appointment of counsel is unwarranted. See Hodge v. Police Officers, 802 F.2d 58, 61-62 (2d Cir. 1986) (listing factors for consideration). Peña's brother raised substantially identical issues on his Section 2255 motion, and having thoroughly considered those issues, as well as the record in that case and this one, the Court finds that appointment of counsel is unnecessary for just resolution of Peña's Section 2255 motion.[3]

B.   MOTION FOR RELIEF UNDER SECTION 2255

The Government concedes that Peña's convictions on Counts Seven and Eight cannot stand. Both counts were predicated on the conspiracy charged in Count Four, which qualifies as a predicate "crime of violence" under the residual clause of 18 U.S.C. § 924 that was held unconstitutionally vague in Davis. (See Dkt. No. 437 at 1-2.)

The Government contends, however, that the predicate for Count Three remains valid under Davis and thus should not be vacated. The Government acknowledges that all three Counts

---

[3] Peña's request for appointment of counsel is limited to his Section 2255 motion. To the extent Peña also seeks counsel to assist him in briefing his compassionate release motion, the Court finds that counsel is likewise unwarranted because Peña's "chances of success [on that motion] are extremely slim." Hodge, 802 F.2d at 60.

were predicated on conspiracy to commit murder-for-hire *and* an uncharged drug trafficking crime. (See Dkt. No. 445 at 2.) Nonetheless, with respect to only Count Three, the Government argues that there is "legally sufficient evidence" to support the drug conspiracy predicate and therefore sustain the conviction. (See Dkt. No. 445 at 3.)

The Court is unpersuaded. First, Count Three is not meaningfully distinct from Counts Seven and Eight. Count Three is predicated on a conspiracy to commit murder-for-hire and an uncharged drug trafficking crime. So are Counts Seven and Eight. The Court notes that the drug trafficking predicate in Count Three is "namely, a conspiracy to distribute cocaine," and the drug trafficking predicate in Counts Seven and Eight is "namely, a conspiracy to distribute and possess with intent to distribute cocaine." (See Dkt. No. 152 at 3, 7-8.) But the Government does not argue, nor is the Court persuaded, that this distinction is meaningful for the purposes of sustaining the 924(j) charges.

Moreover, the Government's insistence on preserving Count Three, while conceding to the vacatur of Counts Seven and Eight, is confounding on the facts. Ramon Flores hired Peña to kill Pedro Medina so that he could take over Pedro Medina's drug turf (Counts One, Two, and Three). A different drug dealer hired both Peña and Jose to kill Jose Suarez in

retaliation for murdering that drug dealer's brother during a stash house robbery, and Juan Carmona was also killed in the process (Counts Four, Five, Six, Seven, and Eight). As such, both buckets of criminal conduct were carried out at the behest of drug dealers in connection with their drug trafficking operations. The Government has not provided any basis to treat them differently.

The Government correctly points out that a 924(c) conviction "does not require a conviction on the predicate offense so long as there is legally sufficient proof that the predicate crime was, in fact, committed." See United States v. Figueroa, 813 F. App'x 716, 719-20 (2d Cir. 2020) (internal quotation marks and citations omitted). But the Government here does not establish precisely how the trial record provides an adequate factual basis to conclude that the uncharged drug conspiracy in Count Three was committed. Nowhere does the Government list the elements of such a charge or establish how each element was satisfied by the trial record. While the Court acknowledges that an uncharged 924(c) predicate *may* support conviction when there is sufficient evidentiary support in the record, when there is no such evidence, the conviction cannot stand.

The Government points specifically to the testimony of two trial witnesses, Ramon Flores and Jose Santos, as

providing the evidence necessary to support the uncharged drug conspiracy here. Ramon Flores testified that he hired Peña to kill Pedro Medina, explaining that Flores wanted Pedro Medina dead so that he could take over his drug territory and deal drugs there without interference. (Trial Tr. at 224:1-225:8, 230:1-14.). Jose Sanchez testified that Ramon Flores told him that Pedro Medina had become a problem and they would need to kill him in order to sell drugs in the disputed territory, and further, that Ramon Flores told him that Peña had agreed to kill Pedro Medina. (Trial Tr. at 1235:17-1236:15). But the witnesses' reasoning and intent do not conclusively establish Peña's own mental state. And, even more fatal to the Government's argument, this evidence sheds no light on what the jury may or may not have concluded regarding Peña's alleged participation in the drug conspiracy.

Nor does the Government's legal authority persuade the Court to interpret the facts any differently. The Government cites several cases in which the Second Circuit has approved the preservation of certain convictions based on uncharged predicate offenses. (See Dkt. No. 445 at 2 (citing United States v. Figueroa, 2020 WL 2892855 (2d Cir. June 3, 2020); United States v. Walker, 789 F. App'x 241 (2d Cir. 2019); Cooper v. United States, No. 16-1925, Dkt. No. 40 (2d Cir.

Feb. 20, 2019); Fuller v. United States, No. 16-1888, Dkt. 51
(2d Cir. Feb. 20, 2019); Harrington v. United States, 689
F.3d 124 (2d Cir. 2012)); see also Dkt. No. 447 (citing United
States v. Dussard, No. 18-804, 967 F.3d 149 (2d Cir. July 23,
2020).) However, most of these cases involved plea
allocutions in which the factual basis for the uncharged
predicate crime was clearly established by the defendant in
sworn testimony before the court. Here, there was no plea
allocution or other decided factual basis for finding the
defendant's culpability on the drug trafficking crime.

    In the other cases cited by the Government, the predicate
offense at issue was actually charged, such that the verdict
reflected the jury's findings as to that particular conduct.
But because the drug conspiracy was not charged here, the
Court has no indication of what the jury concluded with
respect to that alleged crime. Thus, in the absence of a jury
verdict or plea allocution, the Court cannot conclude that
these cases support a determination that the drug trafficking
crime here "was, in fact, committed." See Figueroa, 813 F.
App'x at 719-20.

    The Court likewise rejects the Government's argument
that Peña has procedurally defaulted his claim that
conspiracy to commit murder-for-hire is not a crime of
violence, prohibiting him from raising the argument now. When

a defendant fails to raise an argument on direct appeal, he
is barred from collaterally challenging a conviction under
Section 2255 on that basis. United States v. Thorn, 659 F.3d
227, 231 (2d Cir. 2011). However, an exception applies "if
the defendant establishes (1) cause for the procedural
default and ensuing prejudice or (2) actual innocence." Id.
The Court need not address whether Peña can establish actual
innocence because cause is shown when, as in Peña's case, the
claim "is so novel that its legal basis [wa]s not reasonably
available to counsel." Reed v. Ross, 468 U.S. 1, 16 (1984).

The Court is persuaded that, had Peña argued on direct
appeal that his 924(j) convictions predicated on conspiracy
to commit murder-for-hire were unconstitutional, the argument
"would have been rejected by the Second Circuit." Lewis v.
United States, No. 16 CR 212, 2020 WL 3498710, at *2 (S.D.N.Y.
June 29, 2020) (citing United States v. Barrett, 903 F.3d
166, 175 (2d Cir. 2018) ("[I]t has long been the law in this
circuit that a conspiracy to commit a crime of violence is
itself a crime of violence under 18 U.S.C. § 924(c)(3).")).[4]

---

[4] While the Second Circuit has not addressed whether Section
1958 murder-for-hire is a crime of violence, other circuit courts have
concluded that it is. E.g., United States v. Lucas, No. 18-4069, 2020
WL 7090720, at *5 (4th Cir. Dec. 4, 2020) (Section 1958 murder-for-
hire was a crime of violence under the force clause of Section 924(c));
Ng v. Atty. Gen. of U.S., 436 F.3d 392, 397 (3d Cir. 2006) (Section
1958 murder-for-hire was a crime of violence under comparable statute,
18 U.S.C. § 16(b)); United States v. Walker, 596 F. App'x 302, 314
(5th Cir. 2015) (Section 1958 conspiracy to commit murder-for-hire was

The Government argues that "[b]y the time the defendant filed his opening brief in July 2015, Johnson had been decided." (See Dkt. No. 445 at 4 (citing United States v. Johnson, 135 S. Ct. 2551 (2015).) While Johnson did raise a related claim, that case was decided in June 2015, just a month before Peña filed his direct appeal. Furthermore, even after Johnson, "[t]he Second Circuit continued to uphold the constitutionality of § 924(c)'s residual clause." Camacho v. United States, No. 13 CR 58, 2019 WL 3838395, at *2 n.2 (S.D.N.Y. Aug. 15, 2019). Thus, Peña has established cause for failing to raise the claim on direct appeal, and because he was actually prejudiced, he is not barred from raising the argument here. See Lewis, 2020 WL 3498710, at *2 (quoting United States v. Frady, 456 U.S. 152, 168 (1982)(prejudice is established where the error "worked to [the defendant's] actual and substantial disadvantage")).

Nonetheless, because vacatur of Counts Three, Seven, and Eight will not affect Peña's other convictions, each of which carries a mandatory term of life imprisonment, the Court concludes that a full resentencing is not warranted. United

---

a crime of violence under Section 924(c). We need not decide the issue here; instead, the Court holds only that the argument -- that conspiracy to commit murder-for-hire is not a crime of violence -- was not "reasonably available" to counsel at the time of Peña's direct appeal.

States v. Gordils, 117 F.3d 99, 103 (2d Cir. 1997) (holding that "the language of § 2255 provides sufficient statutory authority for a district court to exercise its jurisdiction to resentence defendants 'as may appear appropriate'"). The Court is not persuaded that the default rule requiring *de novo* resentencing when a conviction was overturned on direct appeal applies in the Section 2255 context. United States v. Rigas, 583 F.3d 108, 115 (2d Cir. 2009); Ayyad v. United States, No. 16 Civ. 4346, 2020 WL 5018163, at *2 (S.D.N.Y. Aug. 24, 2020) ("A default rule requiring that the district court hold a *de novo* resentencing each and every time a defendant successfully challenges at least one count of a multi-count conviction would be in tension with the narrow scope of Section 2255."). Furthermore, even if the rule applied, the Second Circuit has recognized an exception to the default rule when, as here, "the defendant has already received, as his or her sentence on an upheld count of conviction, a mandatory minimum sentence," and resentencing would be "strictly ministerial." United States v. Powers, 842 F.3d 177, 180 (2d Cir. 2016). Thus, the Court will not hold a full resentencing.[5]

---

[5] The Court is likewise not required to reduce Peña's sentence under United States v. Booker, 543 U.S. 220 (2005) or 18 U.S.C. § 3553(a). Indeed the Court considered both when imposing the current sentence and finds no legal basis to alter its prior analysis now. (See Sentencing Tr. at 10:13-23.) Nor is the Court's decision

Instead, the Court will amend the Judgment to reflect sentences of life imprisonment on each of Counts One, Two, Four, Five, and Six, to run concurrently.

C.    MOTION FOR COMPASSIONATE RELEASE

As a threshold matter, and fatal to his claim for compassionate release, Peña does not indicate whether he has satisfied the exhaustion requirement. A defendant may not seek relief in court under Section 3582 until (i) he has "fully exhausted all administrative rights" within the Bureau of Prisons ("BOP"), or (ii) 30 days have lapsed since he submitted a request for release to the warden. United States v. Battle, 05 CR 377, 2020 WL 2306482, at *1 (S.D.N.Y. May 8, 2020) (citing Section 3582). Peña has failed to demonstrate exhaustion by either method.

Moreover, even assuming he had satisfied the exhaustion requirements, Peña has not established that the circumstances of his case entitle him to the relief he seeks.

To grant a sentence reduction under Section 3582, the Court must find that "extraordinary and compelling reasons warrant such a reduction." Peña argues that the guidelines established by the United States Sentencing Commission's

---

undermined by the other authorities Peña cites. See Camposano v. United States, 431 F. Supp. 2d 399, 401 (S.D.N.Y. 2006) (citing 18 U.S.C. § 3742); United States v. Pepper, 562 US 476, 495-96 (2011).

policy statement (the "Policy Statement") are not binding on the Court. See U.S.S.G. § 1B1.13, cmt. n.1(A)-(D). And indeed, the Second Circuit has held that the Policy Statement "is not 'applicable' to compassionate release motions brought by defendants." United States v. Brooker, 976 F.3d 228, 236 (2d Cir. 2020). The Second Circuit has explained that courts may consider the full range of reasons defendants set forth, and nothing "in the now-outdated version of Guideline § 1B1.13[] limits the district court's discretion." Id. at 237. The Court therefore considers all Peña's arguments in support of his motion for compassionate release, without regard to any limitations established by the Policy Statement.

Peña offers two primary bases that he argues entitle him to compassionate release: his medical conditions and USP Atwater's alleged failure to control the spread of COVID-19. However, based on the facts presented here, the Court is unpersuaded that these circumstances satisfy the "extraordinary and compelling" standard.

First, Peña's medical conditions are generally not the type that put individuals at risk of serious illness. To be sure, obesity with a BMI over thirty is among the underlying conditions that the CDC has identified as presenting an increased risk. *Coronavirus Disease 2019 (COVID-19): People With Certain Medical Conditions*, Ctrs. for Disease Control &

Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Dec. 1, 2020). However, Peña has provided no evidence of his present condition. Peña's evidence shows only that he had a BMI of 30.0 to 30.9 in 2016, approximately four years ago. And, even assuming Peña continues to suffer from obesity today, this condition alone is not enough to warrant compassionate release. Likewise, none of the other conditions Peña had years ago, again assuming he still has them, are among those that the CDC has identified as creating a heightened risk of serious illness. See id. Nor does his age -- fifty-eight years old -- put Peña in the "greatest risk" age category. *Coronavirus Disease 2019 (COVID-19): Older Adults*, Centers for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last updated Dec. 13, 2020).

Second, the Court is mindful that incarcerated individuals face heightened risk of COVID-19 infection. However, as of the date of this Order, USP Atwater reports that currently only two inmates and five staff members have tested positive for COVID-19. *COVID-19: Coronavirus*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last updated Dec. 16, 2020). Moreover, "the mere possibility that the COVID-19 virus could spread within [a facility] cannot

alone provide the 'extraordinary and compelling' reasons that would justify . . . release." United States v. Croft, 2020 WL 3871313, at *3 (E.D. Pa. July 9, 2020) (citing United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020)).

In addition to his health conditions, Peña supports his request for compassionate release by asserting that he has completed a 500-hour treatment program, he has taken advantage of other programming at USP Atwater, he would like to take care of his ailing sister, and he does not pose a threat or danger to the community because, upon release, he would be deported to the Dominican Republic. But, in light of his other circumstances, none of these factors satisfies the extraordinary and compelling standard.

The Court is unpersuaded that Peña's institutional record establishes entitlement to a sentence reduction under Section 3582. Congress has expressly instructed that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). While the Court commends Peña's rehabilitative efforts, they do not meet the "extraordinary and compelling" standard. See, e.g., United States v. Saleh, No. 93 CR 181, 2020 WL 3839626, at *4 (S.D.N.Y. July 8, 2020) (recognizing a defendant's commendable institutional record but denying release).

Likewise, while the Court finds admirable Peña's aspirations to care for his sister, concern for his family's wellbeing does not warrant compassionate release. E.g., United States v. Johnson, No. 09 CR 0272, 2020 WL 3791976, at *2 (D. Md. July 7, 2020). Nor has Peña established that his sister depends solely on him for her care. See United States v. Yoda, No. 15 CR 95, 2020 WL 5502325, at *3 (S.D.N.Y. Sept. 11, 2020) (finding that a defendant who moved for compassionate release to care for his father had not established extraordinary and compelling circumstances because his "father does not appear to depend exclusively on [the defendant] for care at this time").

Finally, the Court acknowledges that in some instances, deportation upon release may mitigate the danger to the community a defendant poses. E.g., United States v. Reyes-De La Rosa, No. 5:18 CR 55, 2020 WL 3799523, at *4 (S.D. Tex. July 7, 2020). However, this is one of several sentencing factors in 18 U.S.C. § 3553(a), all of which must be considered before granting compassionate release. See Section 3582 (the court "may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable").

Here, the Court finds that those factors, on the whole, do not support a sentence reduction. Peña was convicted of

killing three people in exchange for money. The murders were carried out while the victims were handcuffed, a trap Peña constructed by impersonating a police officer. (See Trial Tr. at 221:1-6, 469:7-17, 523:3-10.) Trial evidence suggested that Peña was proud of committing the murders, (e.g., Trial Tr. at 255:7-14), and at his sentencing, he expressed no remorse for his conduct, (see Sentencing Tr. at 6:10-10:11). The extreme violence and disregard for human life reflected here both continue to warrant the lengthy sentences imposed. See 18 U.S.C. § 3553 (a)(1), (a)(2)(A) (establishing that the court shall consider the "nature and circumstances of the offense" and the need for the sentence "to reflect the seriousness of the offense"). Thus, because Peña has not met the extraordinary and compelling standard, and because a sentence reduction in his case would be inconsistent with 18 U.S.C. § 3553(a), Peña's motion for compassionate release must be denied.

### III. ORDER

Accordingly, for the reasons stated above, it is hereby

**ORDERED**, that the request by defendant Hector Raymond Peña ("Peña") for appointment of counsel is hereby DENIED; and it is further

**ORDERED**, that Peña's motion under 18 U.S.C. § 2255 for vacatur of Counts Three, Seven, and Eight is GRANTED, and an

amended judgment will be issued without a resentencing hearing; and it is further

**ORDERED**, that Peña's motion for compassionate release under 18 U.S.C. § 3582 is DENIED.

The Clerk of Court is hereby directed to mail this Order to Hector Raymond Peña, Register Number 20958-069, at Atwater United States Penitentiary, P.O. Box 019001, Atwater, CA 95301.

**SO ORDERED.**

Dated:    New York, New York
          17 December 2020

                                        _____
                                              Victor Marrero
                                                 U.S.D.J.