```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
UNITED STATES OF AMERICA,          :
                                   :
                                   :         09 CR 341(VM)
          -against-                :        DECISION AND ORDER
                                   :
HECTOR RAYMOND PEÑA,               :
                                   :
                  Defendant.       :
----------------------------------X
```

**VICTOR MARRERO, U.S.D.J.:**

On October 29, 2013, defendant Hector Raymond Peña ("Peña") was convicted after trial of two counts of conspiracy to commit murder-for-hire, in violation of 18 U.S.C. § 1958 ("Counts One and Four"); three counts of murder-for-hire, in violation of 18 U.S.C. § 1958 ("Counts Two, Five, and Six"); and three counts of use of a firearm to commit murder during a crime of violence (specifically, the conspiracies charged in Counts One and Four), in violation of 18 U.S.C. § 924(j) ("Counts Three, Seven, and Eight"). (See Dkt. No. 309; Minute Entry dated October 29, 2013.) On October 3, 2014, Peña was sentenced to a term of life imprisonment for each count, to run concurrently. (See Dkt. No. 309 at 2.) He is currently serving his sentence at United States Penitentiary ("USP") Atwater.

On August 5, 2019, Peña requested appointment of counsel to assist him in filing a motion under 28 U.S.C. § 2255 to vacate Counts Three, Seven, and Eight as a result of United

1

States v. Davis, 139 S. Ct. 2319 (2019). (Dkt. No. 422.) Before the Court resolved the request, Peña moved for compassionate release under 18 U.S.C. § 3582(c)(1)(A). (Dkt. No. 450.) In an order dated December 17, 2020, the Court denied his request for appointment of counsel but granted his motion to vacate Counts Three, Seven, and Eight. In the same order, the Court denied Peña's motion for compassionate release. See "December 17 Order," United States v. Peña, No. 09 CR 341, 2020 WL 7408992, at *1 (S.D.N.Y. Dec. 17, 2020); see also Dkt. No. 453.

Now pending before the Court is Peña's motion for reconsideration of the December 17 Order. ("Motion," Dkt. No. 461.) For the reasons set forth below, the Motion is DENIED.

Reconsideration is "an extraordinary remedy to be employed sparingly." In re Health Mgmt. Sys., Inc. Sec. Litig., 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000). As the Second Circuit has explained, the standard for granting a motion to reconsider "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked -- matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). "The major grounds justifying reconsideration are 'an intervening change

2

of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (citation omitted); accord Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr., 729 F.3d 99, 104 (2d Cir. 2013). "[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." Shrader, 70 F.3d at 257.

Here, Peña reiterates several of the arguments he made in his previous motions, which the Court has already carefully considered and rejected. Because Peña seeks only to relitigate these arguments and offers no legitimate reason they should be reexamined, the Court will not address them. See id. On the other hand, while none of the four novel arguments Peña offers in support of reconsideration entitle him to the relief he seeks, the court considers each in turn.

First, Peña argues that the Court has both misunderstood and mischaracterized Peña's previous statements at sentencing. In the December 17 Order, the Court noted that Peña "expressed no remorse for his conduct." December 17 Order, 2020 WL 7408992, at *7 (citing Sentencing Tr. at 6:10-10:11). Peña now explains that because he was medicated, he

3

was not in his "right state of mind." (Motion at 1.[1]) Peña attaches medical records that substantiate his claim that he was on medication when he was sentenced on October 3, 2014.[2] (Motion at 36-38.) But the records do not also show that these medications would have affected Peña's understanding or ability to express his feelings. Nevertheless, even assuming the medications are to blame for the lack of remorse he showed at sentencing, this fact does not warrant reconsideration for two reasons. Peña's Motion does not allege that despite his representations in Court, Peña *did* feel remorse for his conduct or that he feels remorse now. To the contrary, he argues that it was his "affiliation with others," rather than his own conduct, that caused his "current situation." (Id.) And, more importantly, Peña's remorselessness was only one of several factors the Court considered in determining that the original sentence was still appropriate. Putting this one factor aside, the Court remains persuaded that the other sentencing factors continue to support maintaining the sentence as imposed. See 18 U.S.C. § 3553(a).

Second, Peña argues that there is an outbreak of COVID-19 at UPS Atwater and that the public information regarding

---

[1] Because the Motion is not consistently paginated, the page numbers cited herein refer to the page numbers of the PDF as filed on ECF.
[2] The records indicate that three medications Peña took at that time were prescribed to treat atypical depressive disorder. (See Motion at 38.)

4

the prevalence of COVID-19 at this and other facilities within the Bureau of Prisons ("BOP") is inaccurate "due to the lack of institutional-wide testing." (Motion at 10.) Peña adds that the prevalence of COVID-19 variants poses renewed risk of reinfection.[3] But even assuming these representations to be true, they do not entitle Peña to reconsideration. Absent additional evidence of particularized risk, the existence of widespread infection at a particular facility is not typically an extraordinary and compelling circumstance warranting compassionate release. E.g., United States v. Mathis, No. 02 CR 891, 2020 WL 6784136, at *2 (E.D.N.Y. Nov. 18, 2020) (acknowledging a troubling COVID-19 outbreak at the defendant's facility but denying compassionate release because the defendant did not establish exceptional risk after having contracted and recovered from COVID-19).

Indeed, while Peña is reaching an age of increased risk -- fifty-nine years old -- the only medical condition he has

---

[3] The record indicates Peña tested positive for COVID-19 on December 21, 2020. (See Motion at 41.) Peña argues that because the existing data is limited, he may still establish extraordinary and compelling circumstances based on the risk of reinfection. Though Peña has not made out such a case here, the Court acknowledges that when coupled with "other risk-increasing factors," the risk of reinfection can constitute an extraordinary and compelling circumstance warranting relief. United States v. Pellot, No. 19 CR 169, 2021 WL 807242, at *3 (S.D.N.Y. Mar. 3, 2021) (granting a sentence reduction to a defendant who had recovered from COVID-19 in part because recent data suggests reinfection is "on the rise" and the defendant suffered from numerous health conditions that heightened his risk of severe illness (citing United States v. Secchiaroli, No. 17 CR 179, 2021 WL 614632 (W.D.N.Y. Feb. 17, 2021))).

5

which might increase his risk of severe illness were he to contract COVID-19 again is obesity. And while Peña insists that his obesity has gotten worse, his medical records show just the opposite. In late 2013, Peña's body mass index ("BMI") was between 30.0-30.9; several years later in 2019, his BMI was between 28.0-28.9. (Compare Dkt. No. 450, at 19, with Motion at 45.)

Lastly, Peña contends that the Court erred in determining that a hearing was not necessary on his Section 2255 motion. Peña now argues that the Guidelines calculation the Court applied at sentencing is no longer valid in light of the vacatur of Counts Three, Seven, and Eight. In particular, Peña notes that the Court applied Section 2A1.1 to calculate the base offense level. According to Peña, because only his convictions under 18 U.S.C. § 1958 for murder-for-hire remain, the base offense level should be calculated according to Section 2E1.4 or 2A1.5. This argument fails. Regardless of the Guidelines calculation, "[m]urder-for-hire resulting in death carries a *mandatory* term of life without parole." United States v. Davis, 103 F. Supp. 3d 396, 405 (S.D.N.Y. 2015); see also Dorsey v. United States, 567 U.S. 260, 266-67 (2012) (explaining that "sentencing statutes . . . trump[] the Guidelines" and "ordinarily no matter what range the Guidelines set forth, a sentencing judge must

6

sentence an offender to at least the minimum prison term set forth in a statutory mandatory minimum" (citations omitted)).

Accordingly, for the reasons stated above, it is hereby

**ORDERED**, that the motion by defendant Hector Raymond Peña ("Peña") for reconsideration (Dkt. No. 461) is **DENIED**.

The Clerk of Court is hereby directed to mail this Order to Hector Raymond Peña, Register Number 20958-069, at Atwater United States Penitentiary, P.O. Box 019001, Atwater, CA 95301.

**SO ORDERED.**

Dated:   New York, New York
         12 April 2021

_____
Victor Marrero
U.S.D.J.